FILED

98 JUL 30 PM 12: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

Cho

ENTERED

JUL 3 0 1998

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD SHALING,<br><br>     Plaintiff,<br><br>vs.<br><br>CONSOLIDATED FREIGHTWAYS and<br>INTERNATIONAL BROTHERHOOD OF<br>TEAMSTERS, LOCAL 612,<br><br>     Defendants. | CIVIL ACTION NO.<br><br>97-AR-0460-S |

## MEMORANDUM OPINION

The above-entitled action is now before the court on two motions for summary judgment filed by defendants, Consolidated Freightways ("CF") and the International Brotherhood of Teamsters, Local 612 (the "Union"), respectively. Plaintiff, Richard Shaling ("Shaling"), alleges that CF failed to compensate him properly for overtime (hours worked in excess of forty (40) hours per week) work that he performed as a "casual" status employee. According to Shaling, by failing to do so, CF violated the Fair Labor Standards Act of 1938, *as amended*, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). Shaling also alleges that the Union prevented him from getting a promotion because of his "bum leg" in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* For the reasons set out more fully below, the court concludes that defendants' respective motions

44

are well taken and due to be granted.

### I. *Pertinent Undisputed Facts*

CF maintains two categories of employees: (1) regular status employees, who accrue seniority; and (2) casual status employees, who do not accrue seniority and who work only on an as-needed basis. *LaRock Depo.* at 20, 49-50. Shaling began working for CF as a casual status employee on or about June 1, 1993. *Shaling Am. Aff.* at ¶ 13. At all times relevant to this lawsuit, Shaling worked as a casual status driver/checker. *Id.* at ¶ 15. On or about July 1, 1996, CF promoted Shaling to regular status. *Id.* at ¶ 14.

All dealings between CF and its Union-member employees are controlled by a collective bargaining agreement known as the National Master Freight Agreement. *LaRock Depo.* at 146-47. Pursuant to the National Master Freight Agreement, CF pays overtime to a casual status employee based on the length of the shift CF asks him to fill. For example, if a casual status employee works more than ten (10) hours during a ten-hour shift, he will qualify for overtime pay. However, under this arrangement, it also is possible for a casual status employee to work more than the standard forty (40) hour workweek and to receive no overtime compensation. For example, if a casual

status employee works five (5) ten-hour shifts during a one week period, he is not compensated at the overtime rate for the fifth ten-hour shift. *Id.* at 73-78, 94-98, 129-47; *LaRock Aff.* at ¶¶ 5-6. Apparently, this practice is common across the trucking industry. *LaRock Depo.* at 134. According to Shaling, on several occasions between August 7, 1993 and June 29, 1996, he failed to receive overtime compensation as required by the FLSA despite having worked more than forty (40) hours in a given week as a casual status driver/checker. *Pl.'s Exh. 1.*

In or around March 1995, Shaling sought a promotion to regular employee status at CF. At that time, Shaling did not receive this promotion. *Union's Exh.* 7 at 26-27. According to Pat LaRock ("LaRock"), CF's terminal manager, he did not promote Shaling to regular status at that time because of Shaling's poor attitude, his poor interpersonal skills, and his poor relationships with other managers. *LaRock Depo.* at 86-88.

After he failed to receive a promotion to regular status, Shaling filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") against both CF and the Union. The EEOC issued Shaling notice of his right to sue CF and the Union on May 30 and November 27, 1998, respectively. This lawsuit followed.

3

## II. *Summary Judgment Standard*

Rule 56 states in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P.  In addition, the Eleventh Circuit has observed that "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law."  *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).  CF and the Union have invoked Rule 56.

## III. *Discussion*

As noted above, Shaling alleges that, on several occasions between August 7, 1993 and June 29, 1996, CF violated the FLSA by failing to provide him with overtime compensation when he worked in excess of forty (40) hours per week as a casual status driver/checker.  In its motion for summary judgment, CF contends that, because it is regulated by the Secretary of Transportation under the Motor Carriers Act, *as amended*, 49 U.S.C. §§ 31301 et seq., it is exempt from the maximum hours provisions of the FLSA

4

as per 29 U.S.C. § 213(b)(1) ("§ 213(b)").[1]  Shaling argues that, because CF failed to plead the § 213 exemption specifically in its answer, the company has waived this "affirmative defense" and may not invoke the exemption now.[2]  As an initial matter, then, it is appropriate for the court to address the merits of plaintiff's argument.

Although CF's answer does not raise the § 213(b) exemption affirmative defense specifically, the fact does not, as Shaling contends, necessarily result in a waiver of that defense.  It is well settled in this circuit that, "if a plaintiff receives notice of an affirmative defense by some means other than pleadings, 'the defendant's failure to comply with Rule 8(c) does not cause the plaintiff any prejudice.'"  *Grant v. Preferred Research, Inc.*, 885 F.2d 795, 797 (11th Cir. 1989) (quoting *Hassan v. U.S. Postal Serv.*, 842 F.2d 260-263 (11th Cir. 1988)).  In the instant case, Shaling became aware of CF's intention to

---

[1]   The FLSA provides in pertinent part:

(b) The [maximum hours provisions of the FLSA] shall not apply with respect to —

    (1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications for maximum hours of service pursuant to the provisions of the [Motor Carrier Act]; ....

29 U.S.C. 213(b)(1).

[2]   Shaling makes this argument both in his reply brief and in a motion to strike affirmative defenses filed on February 26, 1998.

rely on the § 213(b) exemption not later than June 12, 1997, when the court entertained CF's Rule 12(b)(6) motion premised on said exemption at its regular motion docket. Indeed, Shaling's counsel clearly demonstrated his awareness of CF's intention in this regard in a letter to the undersigned dated June 10, 1997. *Letter from Stewart to J. Acker of June 10, 1997*, at 2 ("It is my understanding that the plaintiff is primarily an intra-state driver and the exception [sic], therefore, under the Fair Labor Standards Act for interstate truck drivers, does not apply") (emphasis in original). Given that Shaling has been on notice of CF's intention to rely on the § 213(b) exemption since this action was in its infancy, it cannot be said that he would be prejudiced by allowing CF to proceed on that defense. *Grant*, 885 F.2d at 797-98 (affirming trial court's decision to allow defendant to proceed on statute of limitations defense first raised one month before trial in a motion for summary judgment). Accordingly, Shaling's pending motion to strike affirmative defenses is due to be denied.

Having determined that CF may proceed with its § 213(b) exemption defense, the court now turns to the merits of that defense.

### A. *Shaling's FLSA Claim Against CF*

Shaling claims that, pursuant to the FLSA, he is entitled to

unpaid overtime compensation in the amount of $883.67. It is well settled that § 213(b) exempts an employee from the overtime provisions of the FLSA if he is an "employee with respect to whom the Secretary of Transportation has the power to establish qualifications and maximum hours of service pursuant to section 204 of the Motor Carrier Act of 1935." 29 C.F.R. § 782.1(a) (1997); *Shew v. Southland Corp.*, 370 F.2d 376, 380 (5th Cir. 1966).[3] Pursuant to federal regulations:

> The Secretary [of Transportation] has the power to establish qualifications and maximum hours of service for employees who (1) are employed by carriers whose transportation of passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a) (1997); *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 181-82 (11th Cir. 1991). Put another way, an employee is subject to the power of the Secretary of Transportation and, therefore, exempt from the protections of the FLSA if the employee, in the performance of his or her duties, affects the safe operation of motor vehicles transporting goods in interstate commerce on public highways. *Webb v. Athens Newspapers, Inc.*, 1998 WL 172654 at *4 (M.D.Ga.) (citing 49

---

[3] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

U.S.C. §§ 13501, 31502). "[E]ven a minor involvement in interstate commerce as a regular part of an employee's duties can subject that employee to the Secretary of Transportation's jurisdiction." *Reich v. Am. Driver Serv., Inc.*, 33 F.3d 1153, 1155 (9th Cir. 1994) (citing *Morris v. McComb*, 332 U.S. 422, 432-35, 68 S.Ct. 131, 136-38 (1947)); *see also Troutt v. Stavola Brothers, Inc.*, 107 F.3d 1104, 1108 (4th Cir. 1997) (observing that "employees need not devote all or even the majority of their time to safety-affecting activities in order to be covered by the Motor Carrier Act"). As it is undisputed that CF is a "motor private carrier" providing interstate freight transportation, *see LaRock Aff.* at ¶2; 49 U.S.C. §§ 13102(13) and 13501, the only remaining question is whether Shaling, by virtue of his duties, falls within the ambit of the § 213(b) exemption.

A review of the record clearly establishes that Shaling's duties as a casual status driver/checker included safety-affecting activities. First, Shaling testifies in his deposition that, during the time that he worked as a casual status employee, he drove goods in interstate commerce an average of two to six times per month. *Shaling Depo.* at 152-53. Federal regulations provide that driving goods in interstate commerce directly affects "safety of operation" within the meaning of the Motor

8

Carrier Act.[4]  29 C.F.R. § 782.3(b) (1997).  Second, and more important, Shaling testifies in his deposition that his casual status duties regularly included both the loading and unloading of freight, and the hooking and unhooking tractor, trailer, and dolly combinations bound for interstate commerce.  *Shaling Depo.* at 156-59; *Shaling Am. Aff.* at ¶ 17.  Clearly, these duties implicate "safety of operation."  *Cf.* 29 C.F.R. § 782.5(a) and (b) (1997) (describing proper loading of freight as safety-affecting function).  Indeed, aside from driving large tractor-trailer trucks, it is hard to imagine job functions that more directly affect "safety of operation" than those which ensure that such vehicles are securely loaded and connected as they travel along crowded public highways.  In view of the foregoing, the court concludes that, during the time period at issue, Shaling fell within the § 213(b) exemption to the FLSA.  29 C.F.R. § 782.2(b)(3) (1997); *Morris*, 332 U.S. at 434-36, 68 S.Ct. at 137-38; *see Troutt*, 107 F.3d at 1107 (explaining that motor

---

[4]  Shaling attempts to discount the importance of his "over-the-road" driving by emphasizing that his primary driving responsibilities entailed making deliveries within a 100-mile radius of Birmingham, Alabama.  *Shaling Am. Aff.* at ¶ 17.  This attempt is unavailing.  According to LaRock, "[CF's] Birmingham terminal normally receives shipments of freight from out-of-state terminals."  *LaRock Aff.* at ¶ 2.  In other words, much, if not all, of the deliveries Shaling made within the Birmingham metropolitan area were "part of a continuous movement in interstate commerce."  *Shew v. Southland Corp.*, 370 F.2d 376, 380 (5th Cir. 1966).  It is well settled that drivers who make such deliveries fall within the scope of the § 213(b) exemption.  *Morris v. McComb*, 332 U.S. 422, 435-36, 68 S.Ct. 131, 137-38 (1947); *Baez v. Wells Fargo Armored Serv. Corp.*, 938 F.2d 180, 182 (11th Cir. 1991); *Shew*, 370 F.2d at 380-81.

carrier employees whose activities affect safety of operation are exempt from FLSA). Accordingly, Shaling's claim for unpaid overtime compensation brought pursuant to that statute is due to be dismissed as a matter of law.

This conclusion remains unchanged despite Shaling's contention that he is not subject to the jurisdiction of the Secretary of Transportation because, as a casual status employee, he had no rights under the collective bargaining agreement that is in force at CF. As CF correctly observes, the extent of Shaling's rights under the collective bargaining agreement has no bearing whatsoever on the scope of the Secretary of Transportation's authority over him. Rather, the scope of that authority, and its concomitant ability to exempt Shaling from the safeguards of the FLSA, turns exclusively on the type of carrier Shaling works for and the type of work he does for that carrier. *See* 29 C.F.R. § 782.2(a) (1997) (identifying class of employees falling within Secretary of Transportation's jurisdiction); *Baez*, 938 F.2d at 181-82 (same).

### B. Shaling's ADA Claim Against the Union

In or around 1984, Shaling was involved in a serious motorcycle accident which severely injured his left leg. *Shaling Depo.* at 12-30. As a consequence of this injury, Shaling has a diminished ability to walk or run. *Id.* In or about March, 1995,

10

Shaling sought a promotion to regular status employment with CF. At that time, Shaling did not receive the promotion. Instead, LaRock promoted three other casual status employees to regular status. Shaling alleges that the Union violated the ADA by preventing him from receiving one of these promotions because of his injured leg.[5]

As support for this allegation, Shaling relies on two incidents. First, he points to incident that occurred several years ago and while he worked for a different company. More specifically, Shaling claims that, in 1988, Harold Simmons ("Simmons"), the Union's business representative, told him that he should support the Union's position concerning a profit-sharing plan "because [he] would never get another job with [his] bum leg." *Shaling Depo.* at 31. This incident purportedly occurred while Shaling worked for Ryder/P.I.E. *Id.* at 7. Second, Shaling points to the deposition testimony of LaRock, his supervisor at CF. In his deposition, LaRock testifies that he told Shaling that his decision not to promote Shaling to regular status was premised, in part, on "information from the Labor Manager." LaRock Depo. at 88. Apparently, it is Shaling's contention that these incidents combine to create a genuine issue

---

[5] Initially, Shaling brought an ADA claim against CF as well. However, on June 13, 1997, the court dismissed that claim with prejudice.

of material fact as to whether the Union improperly influenced CF's promotional practices with respect to Shaling because of his injured leg.

Even if one assumes, *arguendo*, that Simmons's 1988 statement concerning Shaling's "bum leg" evidences some discriminatory intent, Shaling's contention is thoroughly devoid of merit, unless, of course, its frivolity merits the imposition of sanctions. The record contains no evidence whatsoever to support Shaling's charge that the Union influenced CF's promotional practices. Indeed, there is undisputed evidence to the contrary. Both LaRock and Keith Werner, CF's terminal supervisor in Birmingham, testify in their depositions that promotional decisions at the company are the exclusive province of CF's management. *LaRock Depo.* at 152-53; *Union's Exh. 11* at 49-50. Moreover, given that the record demonstrates that the "Labor Manager" is, in fact, an employee of CF and not the Union, LaRock's admission that "information from the Labor Manager" factored into his decision not to promote Shaling does not suggest otherwise.[6] *LaRock Depo.* at 87. As there is no evidence that the Union, let alone Simmons, had any role in CF's

---

[6] In fact, in his deposition, Shaling concedes that, when LaRock referred to the "Labor Manager" or to "labor people" in conversations with him, he thought it was in reference to LaRock's superiors at CF and not to Union officials. *Shaling Depo.* at 96-97.

12

promotional decisions regarding Shaling, it cannot be said that Shaling experienced unlawful discrimination as a result of his purported disability. Accordingly, the court concludes that Shaling has failed overwhelmingly to satisfy his prima facie burden under the ADA and that the Union is entitled to judgment as a matter of law.[7] *See Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 910 (11th Cir. 1996) (articulating ADA prima facie case).

## IV. *Conclusion*

The court will enter a separate and appropriate order that is consistent with the conclusions reached hereinabove.

DONE this 30 day of July, 1998.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[7] Shaling also attempts to advance his ADA claim against the Union by presenting evidence of inconsistent statements by CF officials concerning the reasons the company did not promote him to regular status in 1995. Obviously, given that the Union played no part in making promotional decisions at CF, this evidence is completely irrelevant.